Good morning, Your Honor. My name is Keith Helsendegger. I represent, I'm from the Federal Public Defender's Office and I represent the petitioner, Tony Aguilar. I'd like to save three minutes for rebuttal, if I may. This court should reverse the denial of Mr. Aguilar's habeas petition. The district court correctly reviewed his Miller claim de novo under AEDPA, but incorrectly ruled that his sentencing proceedings complied with Miller. Can I ask you a preliminary question? The Jessup, if I can call it the Jessup argument, is made in two of these three cases, but apparently not in your briefs at appeal in this case. You've made that argument to the district court. Why didn't you make it on appeal? Because I think that there's a qualitative difference between the capital sentencing proceedings that were here, where there were three sentencing options, one of which was a death sentence, and the sentencing options, you know, neither of which carried the possibility of parole. Doesn't the same, I mean, you can make whatever argument you want, but doesn't the same argument once the judge in at least one of these cases says, I'm not going to give you the death penalty, he then has to choose between LLOP and life with a possibility, and he's then back in that same statute once again, and there's no parole because Arizona's done away with it. So it seemed to me the argument did apply to this one, but for some reason he didn't make it. I was trying to figure out why. Well, because I saw some qualitative difference between capital and I agree, Your Honor, once the judge decides, for reasons that are not Miller related, that are capital sentencing related, once the judge decides that he's not going to impose a death sentence, then he's back to the, well, I've got to choose between these two sentences. And in 2010, when your client was resentenced on the 2002 conviction. It was 2005. 2005, I'm sorry. Well, whenever he was resentenced on the 2002 conviction, that's precisely what the judge did. The judge said, I no longer have the option of death that the jury chose. I must do the life LLOP versus possibility of parole. So as to that conviction. That's definitely a mandatory sentence. He was exactly in that situation. He was exactly in that situation, yes. Do you suppose the Supreme Court envisioned a juvenile offender sentencing in which the offender had killed three people? Yes. I can't say that there was a particular case in front of it. I mean, Miller and the companion Hobbs, I think is the name. No, it's Jackson. Neither of those cases involve more than one victim. But the Supreme Court, since Miller, has seen plenty of cases that I have to imagine at least one of them involves more than one victim. There are two cases here, the 97 case and the 2002 case. Do I have that right? That's right. In the 1997 case, there was expert testimony on the capacity of youthful offenders to change, correct? That's correct. And in 2002, there was also some testimony about that. There was some testimony about that, yes. Suppose, hypothetically, we find a problem, an LLOP problem, with one of these sentencing but not with the other. What's the result? If that were... And if we affirm, uphold, that there's not violative of Miller-Montgomery, one of the sentences, and let's just pick the 2002 because he's already been convicted of two killings and now a third, isn't that enough? Isn't it enough for a sentencing judge to say, look, you've killed three people? And to me, that's adequate proof of incorrigibility. If this court were to say that there was a Miller violation in one case but not the other, the effect would be that Mr. Aguilar's total sentencing package stands. Yes. A judge could surely find on this record that your client was incorrigible. That's really not the issue in front of us, is it? That's right, Your Honor. That's not the issue in front of us. Looking at this record, I would be hard-pressed to reach a different conclusion given that murders continue. But the question is whether or not the judge actually made that determination, isn't it? That's the question, Your Honor. Yes. Well, is it really the case since we're under AEDPA here? We're really looking at whether AEDPA was violated in a situation a little different than a direct appeal. What specific Supreme Court case would you cite that says that the sentencing in, say, the 2002 sentencing violated AEDPA? Well, if I may, Your Honor, the reason that the limitation on relief in AEDPA is satisfied in this case is because the last reason state court decision did not adjudicate either of Mr. Aguilar's or Mr. Miller's claims on the merits. Didn't it found him untimely, right? No, that's not the case. Again, we have three. The last reason state court decision to the Court of Appeals in this case, and I've got a little chart here, but why don't you remind me what the Court of Appeals held in this case? The Court of Appeals held in Mr. Aguilar's case that it was affirming the denial of post-conviction relief because all Mr. Aguilar said in his pro se filings was that he wanted an evidentiary hearing. He had not presented that request to the Superior Court, and for that procedural reason, it was affirming the denial of post-conviction relief. That's not an adjudication on the merits. Didn't the Court of Appeals say that, and maybe I've got this wrong, the Court of Appeals said because Miller only ruled out LWAP as a mandatory sentence, and then it said it assumed without deciding that Miller was a significant change in the law. Are you looking at paragraph three of the Court of Appeals opinion? Yes. And I understand the Court of Appeals, by the way, thought there was only one case in front of it rather than two, but the reasoning would apply to both. The reasoning would apply to both. But didn't the Court of Appeals go on alternatively to address the merits? I guess I didn't read paragraph three that way, Your Honor. I read paragraph three as, well, this is a description of what the Superior Court did, and then the decision goes on to describe what Mr. Aguilar's arguments are on review Aguilar asserts, and then the Court says we're affirming in paragraph five, we're affirming because all he's asking for is an evidentiary hearing. He didn't make that request to the Superior Court. There's nothing left for us to review. So assume that we are reviewing under a deferential, clearly established law standard. We still have this problem we've been talking about all day, which is the clearly established law arrived after the decision in this case, but it's retroactive. So to go back to your question and Judge Smith's question, which is the same, if you think that there's an adjudication on the merits, then you have to decide was that adjudication contrary to Miller, and that is the argument we've been talking about all morning, it was contrary to Miller because these capital sentencing proceedings were not an adequate vehicle for determining whether he was permanently in court. That's the question though, isn't it? Because I mean, I know you feel differently, but bottom line is, if in the hypothetical I gave you before, if all of the evidence that would have been required in a Miller slash Montgomery hearing were there, and the judge considered it, and if you had the new law applied, there would have been no different evidence. If the judge sentenced it the same way, even if they didn't say anything, the question is, is that enough? I know you say it's not, but if under AEDPA, we look to what the Supreme Court has said, is there anything that you would point to in Miller or Montgomery that you think absolutely nails this question and says, no, you can't do that, Judge Smith? I would point to the fact that the Miller relies on the principle that the sentencing of juveniles cannot proceed as if they were not juveniles. There would be no difference in the procedures that were afforded to Mr. Aguilar if he had been, like I'd said before, if he'd been 16 or 26 or 46, he would have gotten the same kind of sentencing. Well, perhaps he would have because of the three murders, but in this case, again, assuming all this evidence put in, in this case, I believe there was substantial evidence about his youth, his early problem with drugs and discipline and sexual abuse and all kinds of things that were brought in that pertained to his youth. Those are the very kinds of things that at least I think Miller focuses on. So let's assume for a moment that that was adequate under a current situation. Why under AEDPA, where it's a very differential review, why isn't that enough to satisfy Miller and Montgomery? Here's another reason. State law in a capital sentencing proceeding did not allow the judge to impose a sentence other than death, either life with or without the possibility of parole, based solely on the fact that the defendant was 16. Yeah, but the problem with the death, we have a separate proceeding here, and you got to win both to get your client any relief, obviously. And in 2005, he's resentenced in a non-death penalty proceeding. Death is taken off the table because of Roper, and now we're, now the judge conducts a non-death penalty proceeding. So put aside what the constraints on the judge in 1997 for a second, and go back to Judge Smith's question. He hears all the evidence he would have heard today to make a Montgomery-Miller determination. We can look at this record and say, boy, any reasonable judge making a Miller-Montgomery determination on this record could have easily arrived at a determination of incorrigibility. Assume those as part of my question. Is there still a defect in the 2005 resentencing? In other words, do we have to know that the judge was actually thinking about that, or can we look at this record and say, boy, three of us are judges, and if we were thinking about it, that's the conclusion we would have reached. Under AEDPA, is that reversible? Yes, because it's contrary to Miller. Miller requires the judge to... Requires the sentencing judge to be focused on that issue. Yes, to make a substantive classification. Which two categories does this defendant fall into? And even though we could say, had he made that classification at the time, he would have been perfectly reasonable with this particular defendant who murdered more than once. On this record, we can't tell whether he did. Is that your position? That's my position. Yes, Your Honor. And you're asking us to create this requirement, or you're saying that Miller expressly requires that the judge say that's what he or she has done, and is it in connection with the evaluation? I'm saying that Miller requires the judge to make the record, and... What does that mean, though? I mean, we're all searching. We're trying to find the right answer in this. And it seems like, certainly in the 3553A context, we have all kinds of people saying, oh, the judge didn't go through this list of things, and how do we know the judge considered it? And our case law says you don't have to do that. So in this case, as my colleagues pointed out, Roper had come in by 2005. The death penalty was off the table. If everything was there, then it would have been under Miller, under Montgomery. But the judge did not expressly state how he arrived at his determination. Why doesn't that comply with Miller? If I may borrow from the 3553A case law for a moment, Your Honor. In that kind of a context, when the defendant presents a non-frivolous argument for a particular sentence, and here that would be, judge, you should impose a sentence of less than life without parole because my client has the capacity to change over time. And there's no evidence in the record that the judge addressed that argument. That's reversible. Well, he can address it. It seems what we're trying to figure out is what Miller and Montgomery require. So they clearly have a procedural component. You have to have the ability to present to the judge this kind of evidence and make arguments about it. And let's assume that in your cases, that procedural component was met. What is the substantive component? It doesn't mean the judge has to a finding of irremediability. So for AEDPA purposes, what do we have to focus on? Was he thinking about it? Was it required? Did he know that he had to do it? That's the difficulty on the substantive side. Can you help us on that side? Here, there is evidence that the judge didn't consider it because he said at the 2005... We know the statute didn't require him to, but I'm asking on this record. But he said at the 2005 hearing, the reason I'm imposing life parole is the aggravating factors, the fact that you've killed before. And that may not be sufficient to show that he's capable of changing over time. These murders, by the way, I know that I refer to them as the 1997 and the 2002 cases. I know that they occurred. But they occurred a month apart when he was 16. And in 2005, there may have been other evidence, but the judge just didn't look at it. And I see the yellow light is on. We're going to give you an extra two minutes because this is important here. So why don't you let the state make its argument, and then we'll have you back up for rebuttal, okay? Thank you, Your Honor. Good morning, counsel. Good morning. May it please the court. Lindley Wilson, Assistant Attorney General, representing respondents of the state in this matter. This court should affirm the district court's order, but do so by applying EdPET standards, which require deference to the The state courts reasonably rejected Aguilar's Eighth Amendment claim premised on Miller because the sentencing judges considered both mitigating and aggravating factors under a sentencing scheme that afforded discretion and leniency. We start with the second part of that. Sure. The Supreme Court tells us that the Arizona scheme did not afford discretion and leniency at the time. Doesn't that end the Miller analysis? It doesn't because, first of all, Miller itself was not an EdPA case, and it was not interpreting Arizona law. This was in a footnote. Well, it's in the text too. There's several places where it describes Arizona as having a mandatory OOP scheme. It may be Supreme Court dictum, but we're supposed to pay a lot of attention to what their dictum says. I think in this context, this court should not consider that or is not really bound by it because of the context in which this case arises, which is under EdPA. As to the Jessup discussion, I think this court should hold off on talking about whether the Arizona statute is mandatory or not, because that has not been raised here. So let's get back to your first point, which I guess because the other side is not pressing Jessup in this one. How do we know that the sentencing judge in this case considered irremediability? We know we heard evidence about it. We know the statute didn't require him to consider it. We know that he had no idea that Miller and Montgomery were going to come down the road 20 years later. So on the substantive part of the case, can we just reconstruct his reasoning and say, well, had he known about it, this is what he would have done? Or do we have to say, go take another shot at it, and if that's what you conclude, sentence him to LOP again? I think we should start back again with what the rule of Miller is and what that holding is, and it's that it prohibits the mandatory imposition of a natural life sentence on a juvenile. That's all? That is all for purposes of this proceeding. That's all it doesn't? Have you read Montgomery? It made Miller retroactive, yes. Yeah, and it said a lot more. It said, we explained in Miller that it is only the in effect make a determination that this particular defendant is irremediable. Court then went on to say, we're not requiring a particular form of words, but that's the substantive process we want sentencing judges to go through. So Miller did more than prohibit mandatory LOP schemes. It required even under schemes with discretion that the judge use this evidence to make a determination of irremediability. Do you agree? I think the Arizona Supreme Court agrees with that assessment to some degree. You got to be really smart to be on that court. So again, as we've reiterated throughout these proceedings, any reliance on Montgomery is for the state courts to consider and assess. Can you cite any federal case that's found that Montgomery isn't simply an explanation of Miller, but is rather new law? Any case that establishes that Montgomery is new law? Any federal case dealing with AEDPA that has treated Montgomery as new law? Well, no, it made Miller retroactive. Well, but you so, and it says, and by the way, let us explain what we said in Miller. Right. Now, us mere mortals may not have read that out of Miller, but the Supreme Court says we should have read it out. That's what we meant. That's what we meant. You know, and so I think we got to treat Montgomery as saying what Miller held, don't we? Not in this context, because if we go back to first principles about what AEDPA is founded on, it's principles of comedy, federalism, and respect for your state court colleagues. In respect for our state court colleagues, they want to re-sentence all these people. That's what they said in Valencia. Valencia said, come to us and we'll send you back for a new hearing. So if I respected our state court colleagues, I would say to them, take these cases, you want these cases back for re-sentencing? We'll send them back for re-sentencing. Well, I agree with that to some degree because... So why haven't you just agreed to re-sentencing then? Well, not in these proceedings. To the extent that Mr. Aguilar has any remedy, it would be in state court under Valencia. I guess I'm asking you a question. If you are willing to agree to have Mr. Aguilar re-sentenced in state court, I bet you as difficult as this guy over here is, he'll shake your hand and you'll walk out into the courtroom and sing kumbaya together. So what are we fighting about here? I should be clear. I am not agreeing that he's entitled to a re-sentencing. Under Valencia-Heeler, he has the burden of demonstrating that he is entitled to a re-sentencing under the rules of procedure in Rule 32. So that is not... Again, all of this is just premature because this is all for the state court. So you think he has to go back to state court and exhaust the Montgomery claim? To the extent he wants to rely on Montgomery, yes. And again, I ask you, can you cite me a single federal case that says so? I don't think I need a federal case. I just cited... I don't know if the court... Well, I'm not asking you what you think you need. I'm asking you whether you can cite me a single federal case that says that a Montgomery claim must be exhausted separately from the Miller claim. I would cite Shoup v. Hill, which was in our supplemental authority. Yeah, I've read Shoup's. Shoup's doesn't say that a Montgomery claim must be It's not particular as to this situation, but it does very clearly say... It's a general exhaustion requirement about a decision that's not retroactive. So I'm asking... There's tons of these cases. They're all over the country. I've tried to read them all this week. My eyes are glazing over. The one thing I couldn't find was a single case that said that a Montgomery claim had to be exhausted separately from the Miller claim. And I may not be the world's best researcher. So I'm asking you the question again. Have you found any single case that says that a Montgomery claim must be exhausted separately from the Miller claim? Again, not on Miller-Montgomery. But I would direct this court to look at Picard v. Connor and Gomez v. Drecke, which I've cited in the briefs that talk about many new cases. They're cited in the briefs. I don't want to stop you from making your argument. I just want to make sure I'm not stupid. You're not stupid, but I want to ask her. You're not missing something. Have you found any case that says that? Not on the Miller-Montgomery question. I think this point has been exhausted. I think so, as I might. So let me go to a slightly different question. As has been pointed out before, you had, in one sentencing, the capital regime was in place. The second one, it was not. So for purposes of AEDPA, does whatever we decide with respect to what I'll call the 1997 sentencing correspond to the 2002, I'm not sentencing, but trial and so on? Are they different? Do we treat them differently? I don't see any meaningful reason to treat these proceedings in this particular case differently. As you pointed out in a previous question, I think many times there might be constitutional error in a variety of contexts, sentencing contexts, where the judge fully considered all of the things that a later decision talks about, and even though that's not specifically outlined in Arizona law, this record, of any record, is going to be sufficient to establish what these later cases have imposed. I gather from your response, then, that you would feel differently than your opposing counsel to, in response to the question I raised before, which is that if all of the were presented, but in a different time context. But let's say the 2002, when the death penalty was off the table. Even though the judge didn't say what was the basis of the evaluation, would that be enough to satisfy AEDPA in this case? Yes. How can we tell from this record that the judge considered irremediability and made a determination of it? Well, there was just extensive testimony, specifically about not only age-related characteristics, but at both sentencings, evidence presented about Aguilar's brain damage, which was contested to some degree. I know he considered it. That wasn't the question I asked. How do we know that that's the determination he was making, of irremediability? As a second time, the judge said, jury found three aggravators. That's good enough for me. I'm going to give you a whole lot. That may not have been his entire mental state, but that's certainly what the judge said on the record. So I'm trying in these cases to find some indication that the sentencing judge, and I start from the premise that he well could have, in these cases, found incorrigibility or determined that that was his job. Can you help me with the record and show me where you think the judge did that? Well, I think it goes back to my colleague's initial point, which was that even Montgomery itself says no formal findings are required. No formal findings. But we have to review a record. So give me some confidence on this record. He did have in front of him expert testimony on the capacity to change in the 2002 case, correct? I believe in both cases, yes. And even, you know, I think my reading is in the 97 case, there was no capacity to change evidence. But there was in the 2002. I recollected that there was just extensive testimony presented at both proceedings about, and again, going back to what Miller is talking about. We'll have to check into that. While I have you up here, what's the last reasoned decision in this case by the state court? I believe with respect to the 1997 case, we would look to the Superior Court because the Court of Appeals, for some reason, did not think that. It's procedural. Right. And so that would be the Superior Court ruling, which is very reasoned and is substantive in nature. It's not procedural. That is a merits analysis. And then with respect to the 2002 case, that would be the Arizona Court of Appeals. So you wouldn't treat the 2002 decision, although its reasoning covers both cases,  I think because of that flaw, then we need to look to the last reasoned decision, which is the Superior Court. Is that the position you took in the district court? I thought the position you took in the district, maybe I had it wrong. It is. We acknowledge that that appeared to be a mistake on the Court of Appeals part. Is there any such thing in this context as harmless error? What I mean by that is this. In the 2002 hearing, death was off the table. Let's assume all the evidence that was required was there. You've got three different murders. It's certainly objectively clear that a judge with that evidence could have determined that this was an incorrigible individual. If the evidence is so overwhelming, do we have the right in a context such as this to say, well, he may have done something slightly different, but the result would have been the same, therefore it is harmless error. Is there any such thing as that in this context? Yeah, I think this can be reviewed for harmless error. But again, I would encourage this court to only look at Miller. Assume you don't win on that. We haven't yet talked about Bell v. Uribe, but I would like to emphasize that this is factually indistinguishable from Bell. To the extent that this court considers Montgomery, do you think that that would conflict with this court's summary and discussion and analysis of what a Miller claim is? Bell is pre-Montgomery, correct? It is. And Montgomery then comes out and says to us, however you were reading, you know, let me tell you how to read Miller. And so to the extent Bell is inconsistent with Montgomery as an inferior court, I don't think we can follow it. Can we? Oh, I think you absolutely can follow Bell. See, if the Supreme Court tells us we were wrong, we can say tough luck. Again, I think we have to ignore Montgomery in these proceedings because any reliance on that case is only a state law question. So let me ask you a different question. If Mr. Aguilar were to bring a successive PCR petition in state court based on Montgomery, would the state not oppose it? I think under Valencia Heeler, he has demonstrated that he has a colorable claim under our procedural rules. And so you'd say it would not contend that it was untimely? No, I don't think the state can argue that now after Valencia Heeler. I know the magistrate judge's report and recommendation in this case was issued two months before Valencia Heeler came out from the Arizona Supreme Court. And so that's important because I think there was maybe this assumption that this claim would be precluded in state court. But the Arizona Supreme Court has made that clear that defendants who are situated in his position have at least made a colorable claim and they can move forward from there. What do we do about Cullen versus Penn-Holster? As you know, the Supreme Court there made it clear that we look at the law that was in effect at the time. Now, there is a retroactivity issue here. But I guess my question is, to some degree, it's not expressly overruled by something the Supreme Court says is overruled. Doesn't Cullen versus Penn-Holster limit what we're imposing, if you will, on this sentencing judge? In other words, what can we say the judge needed to consider in light of Cullen versus Penn-Holster? I mean, Cullen versus Penn-Holster is that you are stuck with the record at the time. So, yeah, I think that precludes any further evidentiary development. For habeas purposes, we're stuck with the record at the time. Right. Yeah. Right. So I... Quick question. Should we wait for a brilliance? If the court could remind me which... Brilliance. Brilliance is currently under the possibility of in-bank review. The vote among the active judges is going on right now. And it addresses the issue. But it's not in that case, though. Is it a direct review? Yeah. But part of the issue in that case, in the petition for a hearing, is a call that we ought to overrule Bell. Good to know. Might well wait. Frankly, again, I do think this court should adhere to Bell to the extent that that's the argument that's floating around. But you do agree Bell's inconsistent with Montgomery. I just don't read Montgomery as having any effect on Bell. I don't think... You don't think Montgomery has a substantive component? No, it made Miller retroactive. But I know it made Miller retroactive. The question I'm asking you is, does Montgomery make clear that Miller had a substantive component? Not only that you had to have the ability to present such evidence, but that the judge... Judge Hawkins used the words before, so I won't try to do them again. Needed to look at that evidence and make a determination whether or not this was one of those rare, irremediable defendants. You agree that's what Miller, as read by Montgomery, requires? It can be read that way. Do either of my colleagues have additional questions? I don't. Thank you. Thank you. Counsel, you have some rebuttal time. You got his extra time on there. Great, thank you. I'd like to address Judge Hawkins' questions about Brionis first, because it dovetails a lot with the questions that Judge Smith was asking me before. Should this court wait for Brionis? If Judge O'Scanlan's view in Brionis should prevail, it lends a lot of support to my arguments about how this court should review... Yeah, and maybe that's why I should have phrased the question to your colleague. Judge O'Scanlan's dissent says there is this substantive requirement, and we have to be able on the record... Put aside the AEDPA issue for a second. We have to be able on the record to determine that the judge really did what the Supreme Court said he was supposed to do. And if this court agrees with me that there's some way around the AEDPA limitation on relief, then this panel's review of this case would be in the same posture as Brionis. You'd be reviewing it de novo. That's... Well, even if we're reviewing under the AEDPA deferential standard, given that, at least for purposes of my question, that Montgomery and Miller walk backwards in time, isn't that the clearly established law that the state court should have been applying? That's also my argument, Your Honor, and that's why I think that Montgomery... That's why the Cohen stuff is kind of difficult. Well, right, and that's why I think that Montgomery implicitly overruled Bell v. Arebe. Bell v. Arebe I don't think was consistent with Miller when it was decided, and Montgomery certainly explains why the discussion in Bell v. Arebe isn't consistent with what Montgomery said Miller... Can you address Judge Smith's question, which is the really troublesome one in this Any sentencing judge could have reasonably made a conclusion consistent with Miller and Montgomery that your client was among that small group of defendants who ought to be sentenced to LWOP. Assume that that's true. You may contest it, but let's assume that's true. What do we do with that? If the court reads the record to say that the judge considered and made that determination under whatever standard Miller required... Yeah, no, that's not what I'm asking. I think the question Judge Smith was asking is, well, maybe he didn't know about Miller, obviously, so he didn't make that determination under the Miller standard. State law didn't require him to, and he didn't know about it, but if we look at this record and say, boy, that's a perfectly reasonable conclusion from this record, what do we do? If this court reaches that conclusion, I suppose that would be a way, as I did suggest in my brief, my reply brief, that this court could find any Miller error to be harmless. That's the question he was asking. Can there be a harmless Miller error? I did concede in my reply brief that there is a way to find this kind of Eighth Amendment error to be harmless, but the state didn't argue that there was a way to find that. That it was harmless in that way. And indeed, I take it that what your opponent is saying is that you have a colorable Miller claim because you said you could go back to state court and assert your Valencia rights. The one thing that I would be happy to go back to state court and do that, if the state could give me and other clients of mine in this posture any assurance that no state court on sua sponte review of the record without notice and opportunity to comment to the parties. That's a separate problem. Look, if you went back to state court and got a remedy and you thought that remedy violated the Constitution, we're open for business. So, I mean, this is not a mediation. This is not let's make a deal. My question is, and the state seems to agree with you, no matter how we rule, she's saying you have a state, you have an available state court remedy. Your Honor, respectfully, I don't think it's a different problem because I'm not sure that there is an available state court remedy for this very reason. My clients have all gone to state court, asked for a resentencing under Miller, and. All before Valencia was decided. Right. Valencia is now decided and the state says we, and look, the Valencia regime may or may not be constitutional. Let's put that aside for a second. Right, right. We have a regime in state court where the state court judges are saying, give us back these cases and we'll process them again. Whether the processing is going to be to your liking is a separate issue. And so one of my problems with this is that if we sent it back to state court, you would receive some sort of hearing and maybe a remedy. If you didn't receive the remedy, you could come back to us and say, I've now, the state now agrees I've exhausted everything and let me tell you why I didn't get appropriate treatment. So while I, while I don't think Montgomery is new law, it's a little strange because there, we have a state court that said to us, we have a process for dealing with these things. And she concedes that your claim is colorable enough to invoke that process. So, Your Honor, maybe, maybe I can phrase this in a way that resonates with the, with the question you asked me. If this court sends this case back to state court, it grants a habeas corpus writ. That's, that means release Mr. Aguilar unless you do something. And if I don't think the state court's going to flood. Now, if we sent you back and said, go back, go, the state wants you to exhaust this Montgomery claim. And the state court says, please come to us because we think you have a wonderful claim. Why, why should, why shouldn't, in the spirit of comedy, why shouldn't we be doing that? Because I'm not sure that that's an available remedy. She says it is. She can't oppose it. She got on the record. We taped it. You go back to state court and you assert you have that remedy. The state of Arizona cannot say you do not. But Your Honor, the, the, the attorney general or the county attorney can tell a state court that they're not opposing relief. But under Arizona law, the state courts can say, I don't care what concessions the state is making. I'm going to find this claim precluded because it was previously litigated. And in that sense, I don't, I'm not sure that I have an available remedy. Does, does that? What if we suspended these proceedings for you to do that? And if it found it precluded, we would resume the proceedings. If, if this court were to make that order, I would comply with it. Of course you would. Because, because then, Your Honor, I would have some assurance that I could come back to this court and try to get the relief that I didn't. What I'm struggling with here is that, and this is the Edpa question Judge Smith poses in a different way. We have a strange comedy situation here in the sense that the state court has said to us relatively recently in Valencia, we're open for business and eager to remedy any Miller violations that occurred in the past. They may not be eager to remedy them in the way you would like. And, and the state is, and the attorney general is saying, and we'd like you to bring those claims to them. And so under those circumstances, the state may screw it up when you send it back. And then, but we, we'll, we'll be here. We have, we have, you know, we're open most of the time. It's kept for a government shutdown. And so I'm trying to figure out how it is that we meet this sort of comedy requirement of, of Edpa without taking away any potential rights from your clients. See if we can answer that and we'll wind down. Okay. What, what Valencia didn't say, even though I asked them to say this to my clients was this remedy is also open to people who have already tried under the pre Montgomery regime. And if this court were to send me back with some assurance that I could show the state courts and say, look, if you don't do this, the federal courts are looking over your shoulder in the same way that the Arizona Supreme court had been told because of Tatum that the U.S. Supreme court was looking over their shoulder. That might be different, but I haven't, I haven't, I haven't seen that kind of assurance from a state court in a way that would encourage me to try to try to get the remedy from the state courts where I agree. I should try that first. If I can, I'm just not sure that it's available. And if I, if I may, I will ask the court to reverse. Thank you very much. Thank you both for your argument. As you know, these are very complex cases and the court appreciates your argument and your briefs. So the case just argued is submitted.
judges: Hawkins, M. Smith, Hurwitz